**UNITED STATES of America, Plaintiff,**

v.

**Hunter Keith JACKSON, Defendant.**

**Crim. No. H–85–67.**

United States District Court,
S.D. Texas,
Houston Division.

May 21, 1986.

---

Gary L. Cobe, Asst. U.S. Atty., S.D. Tex., Houston, Tex., for plaintiff.

Tom Berg, Asst. Federal Public Defender, Houston, Tex., for defendant.

## ORDER

McDONALD, District Judge.

Pending before the Court is Defendant's Motion to Suppress Evidence. The Motion raises three areas of challenge: suppression of six (6) firearms seized due to an invalid arrest warrant; suppression of five (5) firearms seized as a result of an unlawful, warrantless search and seizure; and suppression of the Defendant's confession. After carefully considering the Motion and the Government's response, the Court concludes that the arrest warrant was valid; that the warrantless search was unlawful; and that the Defendant's confession, although voluntary, should be suppressed as the fruit of an unlawful search.

*Arrest Warrant*

The Defendant, Hunter Keith Jackson, argues that the arrest warrant affidavit was wholly insufficient to support a finding of probable cause that the Defendant received and exercised control over stolen goods. The pertinent portion of the affidavit states:

> Affiant ... has in his possession a written signed and sworn statement by Doyle Alton Dunbar, Jr. in which he admits burglarizing the building.... Dunbar further states that Hunter Jackson knew that he was going to burglarize Mr. Rao's building, and that when he was attempting to leave he got "stuck in a cement slab" and that Hunter Jackson arrived and pushed him back onto the roadway (sic) and upon arrival at Hunter Jackson's apartment they unloaded the stolen property.

The duty of the reviewing court is to ensure that the judge who issued the warrant had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 *reh'g denied*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). That determination must be made by the court after taking into account the totality of the circumstances surrounding the issuance of the warrant. *Gates*, 462 U.S. at 213, 103 S.Ct. at 2317. Factors such as reliability and the basis of knowledge of the informant remain as relevant considerations in the overall determination of probable cause. *Gates*, 462 at 233, 103 S.Ct. at 2329. Based upon the above standard, this Court concludes that through the affidavit presented, the state court judge had a substantial basis for concluding that Hunter Jackson had received and was harboring stolen goods. The informant who committed the burglary, clearly acknowledged Hunter Jackson as the person holding the stolen property and as a person with knowledge that the property was stolen. Probable cause is the existence of facts sufficient in themselves to warrant a man or woman of reasonable caution to belief that an offense

had been or is being committed and that the person to be arrested committed it. The warrant affidavit and statement by Mr. Dunbar adequately established probable cause to arrest Hunter Keith Jackson. The Court is of the opinion that it need not reach the issue of good faith reliance by the arresting officers on the judge's determination of probable cause, however in that regard the Court is inclined to find good faith by the officers who relied on the search warrant. As a result the Court concludes that Hunter Jackson was lawfully arrested and that the firearm retrieved from his pocket was lawfully obtained by the Government.

### Search and Seizure

Defendant Jackson also moves to suppress the five (5) firearms seized from a room in his mother's apartment. First, he argues that the officers' "security sweep" and subsequent search of the apartment were unlawful because exigent circumstances did not exist to require a search and the police officers did not obtain voluntary consent to search.

■ In passing on a defendant's challenge to a search of a third-party's home, the defendant must initially demonstrate standing to make his challenge. To show standing, the defendant must demonstrate a legitimate expectation of privacy in the area searched. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), *reh'g denied*, 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979). A legitimate expectation of privacy may arise where a person has a possessory interest in both the area searched and the items seized. *Rakas*, 439 U.S. at 136, 99 S.Ct. at 426. In this case the uncontroverted evidence shows that Defendant occupied a room in the back of Mrs. McDowell's, his mother's, apartment; the room had an adjoining bathroom; that the Defendant lived in the room with his girlfriend, Ms. Elizabeth Ann Crochran;

Defendant paid fifty dollars ($50) a month rent for the room; he lived in the room for two (2) months [1]; his mother considered this room to be his; and that the apartment manager, who lived next door, was aware of the Defendant's presence in the apartment. The Court concludes that the Defendant has an expectation of privacy in the room where he lived in his mother's apartment, which was searched by the police officers. *See United States v. Rackley*, 742 F.2d 1266 (11th Cir.1984) (overnight guest with a key did not have standing to challenge search of the guest room where they stayed); *United States v. Haydel*, 649 F.2d 1152, (5th Cir.), *reh'g denied*, 644 F.2d 84 (5th Cir.1981), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982) (defendant who had permission to use parents' house had standing). Defendant has standing to challenge the Government's search and seizure.

■ Warrantless searches must fall within one of seven narrowly defined exceptions to the fourth amendment requirement of a warrant. *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). (The exceptions are hot pursuit; exigent circumstances; automobile search; searches incident to arrest; border searches; consent searches; and, arguably a separate exception, plain view). There are two (2) asserted exceptions in this case: search incident to arrest and consent by lessee. The fourth amendment allows for a search without a warrant where the search is incident to an arrest to protect the officer from dangerous instrumentalities in the possession of the defendant or prevent destruction of evidence within the reach of the defendant. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, *reh'g denied*, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969). The facts in this case support a showing of exigent circumstances for a "security sweep," but do not

---

**1.** Although Mrs. McDowell testified that Hunter Jackson had lived in her apartment for six (6) weeks, the Court finds that inconsistency in testimony of little weight in the Court's determination of Hunter Jackson's expectation of privacy. Moreover, Elizabeth Crochran testified that she was responsible for keeping the room cleaned and not the Defendant's mother. These facts support the Defendant's contention of an expectation of privacy.

support a search incident to arrest. The officers testified that after they had disarmed and secured Hunter Jackson outside the apartment, they noticed other unidentified persons in the apartment. They testified that in order to protect themselves, they conducted a "security sweep" of the apartment. They testified that a few officers checked each room of the apartment to ascertain the identity of the persons in the apartment. While one officer testified that he also heard rumors that a live hand grenade was on the premises, that rumor was unsupported by the testimony of Sergeant Collins, who was the officer in charge of the arrest. The officers consistently testified that no one was found in Hunter Jackson's room where the five (5) firearms were found. After unravelling the testimony of the four (4) officers, it appears to the Court that the five (5) firearms were discovered in the course of the search of the room and not during the "security sweep." [2] In either case, there was no probable cause for the officers to seize the firearms. There is no evidence that at the time of the search the officers knew that Hunter Jackson was a convicted felon. They did not know the owner of the firearms. Moreover, the basis of the arrest was for harboring stolen property and not for possession of firearms. The Court concludes that exigent circumstances existed only for the police officers to secure the additional persons in the apartment by use of a "protective sweep" to protect against subsequent violent repercussions after the initial arrest.

■ However, the use of a protective sweep is not for securing a consent to search. To allow police officers to justify obtaining a consent to search a citizen's home on the sole basis of a protective sweep would emasculate the Fourth Amendment of the United States Constitution. The facts of this case do not support a search of the apartment for firearms or other evidence incident to the arrest of Hunter Jackson. The officers secured Hunter Jackson outside the apartment, disarmed him, and had no reason to believe either that dangerous instrumentalities were in Hunter Jackson's reach or that evidence within the apartment would be destroyed. As stated earlier, firearms were not the object of the arrest. The scope of a search incident to arrest must be reasonable under the circumstances. *Chimel*, 395 U.S. at 752, 89 S.Ct. at 2034. The officer's search in this case was not reasonable.

Second, Defendant challenges the Government's claimed consent to search. The Government argues that the owner of the premises, Mrs. McDowell, gave her written consent to a search of the apartment, including the room where Hunter Jackson and his girlfriend lived. Defendant Jackson asserts that the consent was involuntary and, assuming it was valid, Mrs. McDowell could not give consent to the officers to search his room because he had an expectation of privacy in the room which would preclude the Government from relying on the consent given by Mrs. McDowell. The Court need not reach the second issue, because the Court finds that Mrs. McDowell's written consent was involuntarily made.

■ An issue arises whether the Government could rely on Mrs. McDowell's consent to search Hunter Keith Jackson's room. The prevailing view is that where two persons have equal rights to the use or occupation of an apartment, either person may consent to a search, and the evidence obtained from the search may be used against either person. *Gurleski v. United States*, 405 F.2d 253, 262 (5th Cir.1968), *cert. denied*, 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769 (1969); *See also United States v. Cook*, 530 F.2d 145 (5th Cir.), *cert. denied*, 426 U.S. 909, 96 S.Ct. 2234, 48 L.Ed.2d 835 (1976). (Where the Court held third-party consent is valid where the Government proves a reasonable appearance of authority to consent in the third-

---

**2.** Officer Rios testified that he discovered one of the firearms in plain view during his "security sweep," however, the other officers, to the extent that they addressed the issue, testified that all the firearms were seized after the consent to search was obtained from Mrs. McDowell.

**1000**

party and that facts existed showing actual authority in the third-party to consent).

■ Under either test, the facts of this case, as stated above, support the conclusion that Mrs. McDowell had authority to consent to a search of Hunter Keith Jackson's room because she was the lessee of the entire apartment.

■ To rely on Mrs. McDowell's written consent to search, the Government must prove that the consent was given voluntarily. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). Voluntariness is decided from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Mrs. McDowell testified that during the entire arrest she was very upset and crying because of the arrest of her son and because she believed that her son was being beaten by the officers. She testified that she observed one officer kick her son in the side and heard her son groaning outside the door. Mrs. McDowell also testified that the lady police officer, who handed her the consent form, told her that if she signed the form her son would get medical treatment. Mrs. McDowell testified that she signed the form without reading it in order to help out her son. The officers denied beating Hunter Jackson, and Sergeant Sandy Collins denied making the above statement to Mrs. McDowell. However, all of the officers testified that Mrs. McDowell was visibly upset and crying during the entire incident. The Court finds that Mrs. McDowell was hysterical and emotionally upset during the period in which she signed the written consent to search. A voluntary consent cannot be the product of duress or coercion. *Bustamonte,* 412 U.S. at 248–49, 93 S.Ct. at 2058. The Court finds that Mrs. McDowell signed the consent form under duress and therefore her consent was not voluntary. As a result the five (5) firearms

seized at the apartment located at 10555 Spice Lane, Apartment 907, Houston, Texas, must be suppressed from the trial of this case.

*Confession*

■ The confession given by Hunter Jackson to the Bureau of Alcohol, Tobacco and Firearms' agents was directly related to the seized firearms from Mrs. McDowell's apartment. The Government did not offer testimony on the specific arrests which led to the questioning of Hunter Jackson regarding his ownership of the six (6) firearms: one seized on him and five (5) seized from Mrs. McDowell's apartment. Moreover, although a written confession was referred to at the hearing, it was not offered into evidence. The Government charges in its Response to the Defendant's Motion to Suppress Evidence that Hunter Jackson admitted "to the ownership of the weapons found at his mother's apartment." From the pleadings and the evidence adduced at the hearing of February 26, 1986, this Court concludes that the genesis for the confession given by Hunter Jackson was the five (5) unlawfully seized firearms. Having found the search and seizure of those firearms unlawful, the Court concludes that the confession should also be suppressed as a fruit of an unlawful search. Therefore, Hunter Jackson's confession shall be suppressed and the Court does not reach his argument regarding the involuntariness of his confession.[3]

The Clerk shall file this Order and provide a true copy to counsel for all parties.

## JUDGMENT OF CONVICTION AND FINDINGS OF FACT

■ On March 9, 1984, Hunter Keith Jackson was indicted on six (6) counts of violating the gun control laws. 18 U.S.C. §§ 922, 924. On the eve of trial, the

---

**3.** At a subsequent hearing called by the Court for the specific purpose of addressing the issue of Defendant's confession, the Government announced the position that they will not offer the confession into evidence. As a result of the Government's decision, the Court will leave for another day the issue of whether a defendant can challenge his written confession on the basis that his attorney gave him patently incorrect advice on the law and that advice was the genesis of the confession.

Government moved to dismiss Counts One, Three, Four, Five and Six. That Motion was granted. The Government rearraigned Hunter Keith Jackson on Count Two of the original indictment. Mr. Jackson pled not guilty as to Count Two. On April 10, 1986, Hunter Keith Jackson elected to have his case tried by the Court. The Government agreed and the Court consented. F.R.CR.P. 23(a). Defendant was charged with one count of unlawful possession of a firearm pursuant to 18 U.S.C. §§ 922(h)(1) and 924(a). After carefully considering the parties' stipulation, the testimony and the argument of counsel, the Court finds Hunter Keith Jackson guilty beyond a reasonable doubt of the charge alleged in Count Two of the original indictment. In accordance with Rule 23(c), Fed. R.Crim.P., the Court makes the following findings of fact.

1. Defendant Hunter Keith Jackson was convicted on July 1, 1981, in the 176th District Court of Harris County, Texas, of unlawful delivery of a controlled substance, methamphetamine, a felony and a crime punishable by imprisonment exceeding one year. Government's Exhibit 3.

2. Richard Marsh was the probation officer for Defendant Hunter Keith Jackson for his conviction for unlawful delivery of a controlled substance, methamphetamine. Mr. Marsh explained the Gun Control Act to Defendant Jackson and it was his standard procedure to read the entire Gun Control Act Standard form as prepared by the Harris County Adult Probation Department and to explain to defendants that to have any firearms' disabilities removed, it would be necessary "to write the people listed on the form, whose address is in Washington, D.C.," and if written permission is granted by them, then and only then would the defendant's possession be lawful.

3. Defendant Hunter Keith Jackson, after having the form explained to him, signed the Gun Control Act form. Government's Exhibit 2.

4. On March 9, 1984, the Bissonnet Pawn Shop, 8710 Lugary, Houston, Texas, was a federally licensed dealer of firearms.

5. On March 9, 1984, Defendant Hunter Keith Jackson filled out and signed Government's Exhibit 5, ATF Form 4473, in order to obtain the AMT Backup firearm and did receive that firearm that day. Government's Exhibit 5.

6. The AMT, Model Backup, .380 (9mm Kurz), Government Exhibit 4, is an operable firearm and had travelled in interstate commerce from California to Texas, prior to being received by Defendant Hunter Keith Jackson on March 9, 1984.

7. On March 9, 1984, Officer Rios of the Houston Police Department found an AMT, Model Backup, .380 (9mm Kurz), Government's Exhibit 4, on Hunter Keith Jackson during the arrest.

8. After the arrest, Special Agent Robert Wyatt interviewed Hunter Keith Jackson. Agent Wyatt read Defendant Jackson his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

9. The Court finds, beyond a reasonable doubt, that Hunter Keith Jackson committed the acts alleged in Count Two of the original indictment.

10. The Court finds Hunter Keith Jackson guilty of violating Count Two of the indictment. 18 U.S.C. § 922(h)(1).

It is so Ordered.

The Clerk shall file this Order and provide a true copy to counsel for all parties.