**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Cleta BARRINGTON,**
**Defendant-Appellant.**

No. 86–2062.

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1986.

Marjorie A. Meyers, Asst. Federal Public Defender, Roland E. Dahlin, II, Federal Public Defender (STX), Houston, Tex., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, REAVLEY and WILLIAMS, Circuit Judges.

REAVLEY, Circuit Judge:

Cleta Barrington was convicted on two counts of interstate travel with intent to unlawfully promote prostitution and there-

after causing acts of prostitution, in violation of the Travel Act, 18 U.S.C. § 1952(a)(3), and on two counts of transporting minors in interstate commerce with the intent that such minors engage in prostitution, in violation of the Mann Act, 18 U.S.C. § 2423(a)(1). She attacks her conviction on three grounds: that evidence against her was obtained by means of an illegal search, that the trial court committed reversible error in admitting into evidence an inculpatory letter from the defendant to the trial judge, and that her conviction under both the Mann Act and the Travel Act violates the double jeopardy clause of the Fifth Amendment. We affirm.

### Facts

There is little dispute about the facts, sad though they be. Barrington met Christine Hoskins, then 14, Carole Jardina, then 15, and Lisa Barnett, then 17, through her sons. In February of 1984, Barrington's nephew invited Hoskins and Jardina to join him and Barrington on a prostitution venture. The girls agreed, and the group traveled from La Porte, Texas, to Longview, Texas, then to Vicksburg, Mississippi, briefly to Louisiana, and back to La Porte. In Longview and Vicksburg they checked into motels. They would then travel from the motel to a nearby truckstop where Barrington solicited customers on her CB radio. Barrington set the prices for "dates," which occurred inside the cabs of the trucks. She collected the money from Hoskins and Jardina and paid the group's expenses. A second venture with a similar itinerary was undertaken the following month, this time with Hoskins and Barnett as participants accompanying Barrington. There was a third trip the next month, and Hoskins traveled but did not engage in prostitution activities because she was suffering from a venereal disease. Since the indictment named Hoskins as the minor transported on the third trip, the court granted Barrington a directed verdict on counts 5 and 6, which had referred to this third occasion. The jury found her guilty of counts 1 through 4, which referred to the first and second prostitution ventures.

It is from the court's judgment on the jury's verdict that Barrington appeals.

### Discussion

**I. Suppression of the Officer's Testimony**

On the third trip, Barrington shared a room with her sister at the Scottish Inn in Vicksburg, Mississippi. A local police officer, Captain Phil Solomon, obtained a warrant to search the sister's motel room for "marijuana and other controlled substances." He gained entry to Barrington's room pursuant to this search warrant, and, while there, observed in plain view a large amount of prophylactics and douche materials, which, he testified at trial, is evidence of prostitution.

■ Defendant argues that Captain Solomon should not have been permitted to testify as to what he saw in Barrington's motel room, because the search warrant was based on an affidavit not supported by probable cause. The affidavit stated only that Captain Solomon "received information from a confidential informant" who is "known to Captain Phil Solomon and has provided information in the past that has led to arrest and convictions." This is a "bare bones" affidavit frequently condemned by the Supreme Court as insufficient to support probable cause. In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Court set out the "totality of the circumstances" approach to probable cause. The Court there reaffirmed that bare bones affidavits are inadequate: "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.* at 239, 103 S.Ct. at 2333. The warrant in the instant case was defective.

■ The government counters with two unsatisfactory arguments. First, it claims that Barrington's objection to the search warrant should have been raised in the Mississippi state court prosecution on a minor charge of drug possession. It is

unsurprising that the government has no authority to support the proposition that the failure to challenge the introduction of certain evidence in an unrelated state proceeding bars a challenge to that evidence when being prosecuted in federal court. In *Elkins v. United States*, 364 U.S. 206, 223–24, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960), the Court held that "[i]n determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out." *Accord United States v. Fossler*, 597 F.2d 478, 481 (5th Cir.1979). Barrington may here challenge the search regardless of whether she won such a challenge, or indeed ever raised one, in Mississippi state court.[1]

■ The government next suggests that the evidence is admissible because of "the good faith reliance by the officer on the warrant." In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court recognized the "good faith" exception to the Fourth Amendment exclusionary rule. But even in *Leon*, the Court insisted that "the officer's reliance on the magistrate's probable-cause determination ... must be objectively reasonable." *Id.* at 922 n. 24, 104 S.Ct. at 3421. In footnote 24, the Court indicates that an officer may not obtain a warrant based on a bare bones affidavit "and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." *Id.* at 923 n. 24, 104 S.Ct. at 3421 n. 24. In the instant case, Captain Solomon obtained the warrant based on his own bare bones affidavit and then conducted the search himself. If one cannot use a bare bones affidavit and then rely on an ignorant colleague to conduct the search, he cannot himself conduct the search based on his own bare bones affidavit. Solomon's behavior does not fall within the ambit of the good faith exception of *Leon*, for he had no good faith reason to believe the magistrate had made a probable cause determination.

■ Admission of Captain Solomon's testimony was clearly error, but the real question is whether the error was harmful. It should be noted that defendant does not contend that any of the other evidence introduced at trial is the indirect product of the illegally obtained information of Captain Solomon. Both in the investigatory process and in the trial itself, his statements were used only as corroboration of other evidence independently obtained.

The government's case included the detailed testimony of Hoskins, Jardina and Barnett, the corroborating testimony of their mothers, testimony of several of the hotel managers and clerks, telephone bills indicating long-distance calls between each of the two hotels and the mothers' homes, a picture at a nightclub of Barrington with Hoskins, and hotel registration records. This was compelling evidence to convict Barrington without the evidence of Officer Solomon. Moreover, his testimony related only to the third prostitution venture undertaken by Barrington, originally the basis of counts 5 and 6 of the indictment. At the close of the evidence, she received a directed verdict on these two counts. Thus, the Solomon testimony was not direct evidence of any count on which Barrington was convicted; rather, the jury was instructed to consider it as corroborative because indicative of intent, design, scheme, or motive.

■ The defendant suggests that the testimony of the girls in this case is problematic because they were initially coerced by a state police officer into making statements against Barrington which they later

---

1. We note that Barrington is not in federal court on a habeas corpus petition, and so the case is not covered by *Stone v. Powell*, 428 U.S. 465, 495, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), in which the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."

retracted in sworn affidavits. In reviewing the record, we find that although this matter was brought up in cross-examination of Hoskins, Jardina and Barnett, it did not undermine their credibility on the stand. The detail and assurance of their testimony, along with the corroboration provided by their mothers and the hotel clerks, as well as the hotel records and telephone bills, convince us beyond a reasonable doubt that Captain Solomon's observations were of no effect on the verdict. Viewing the record as a whole, we can say beyond a reasonable doubt that the evidence produced by Solomon's testimony would not have changed the verdict. Although Captain Solomon should not have been permitted to testify in the presence of the jury, the error was harmless and does not mandate reversal.

## II. The Incriminating Letter

A week before trial, Barrington sent a letter to the trial judge asking for mercy on the ground that she was rehabilitated since serving time in the Texas Department of Corrections on a charge of compelling prostitution. Barrington explained that she pleaded guilty to this state charge, which was based on the same acts for which she was being prosecuted under the Mann Act and the Travel Act. In addition, she stated in the letter: "I am not trying to deny any involvement I had in this." This letter was introduced at trial through the judge's secretary and over defense counsel's objection.

Defendant argues that the entire letter should have been excluded pursuant to Federal Rule of Evidence 403, for, although relevant, its probative value is substantially outweighed by the danger of unfair prejudice. She contends that "[i]n this case, the undue prejudice arose from the use of the court's personnel and effectively the court itself as a government witness, and

from the references to the defendant's prior prostitution conviction."

■ Portions of the letter were admissible as the admission of the defendant, and her decision to make the admission in a letter to the judge only adds to its dependability. Barrington did not testify and was not subject to impeachment; therefore, her acknowledgement of the state charge and conviction was not admissible over proper objection. That objection was not made, and the objectionable matter remained after the judge gave the defense attorney the opportunity to excise portions of the letter. Counsel chose to exclude references to Barrington's Mississippi marijuana arrest and her previous prison sentences, but left intact the references to her state conviction for the same conduct for which she is prosecuted here.

■ Counsel argues on appeal that she was "forced" to leave in the letter the reference to the state conviction in order to explain Barrington's statement that "I am not trying to deny any involvement I had in this." Thus, she argues, the entire letter should have been excluded. If counsel felt the necessity of allowing the letter to retain material explaining Barrington's admission, it was a tactical decision on her part, and not something she was "forced" to do. The tactic was apparently to cause the jury to feel sympathy for one who had already served time for the same offense. We find no error by the court.

## III. Double Jeopardy

■ Barrington was convicted on two counts of interstate travel with intent to unlawfully promote prostitution and thereafter causing acts of prostitution, in violation of the Travel Act, 18 U.S.C. § 1952(a)(3),[2] and on two counts of trans-

**2.** § 1952. Interstate and foreign travel or transportation in aid of racketeering enterprises

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or
(2) commit any crime of violence to further any unlawful activity; or
(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

porting minors in interstate commerce for the purpose of prostitution, in violation of the Mann Act, 18 U.S.C. § 2423(a)(1).[3] The two counts on the Travel Act and two counts on the Mann Act cover the same prostitution trips or ventures, with the same minors on the same dates. Barrington maintains that the two trips constitute but two offenses, and that the indictment for four offenses violates the double jeopardy clause of the Fifth Amendment to the United States Constitution. The contention has no merit.

In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Clearly, Barrington's conduct violated two distinct statutory provisions, namely, the Mann Act and the Travel Act. The question, then, is whether the Mann Act count and the Travel Act count each requires proof of a fact that the other does not. Barrington argues that this court should follow *Pandelli v. United States*, 635 F.2d 533 (6th Cir.1980), in which the Sixth Circuit held that defendant Pandelli could not be convicted, based on the same conduct, of both a Mann Act and a Travel Act violation, and that the two offenses "merge for purposes of the double jeopardy prohibition." *Id.* at 539.

The *Pandelli* case is no help to defendant. The Sixth Circuit does point out there that *Blockburger* has been modified by *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), and *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). The comparable proof of the two offenses must now be examined with respect to the particular case. In *Pandelli* the defendant was charged with causing a certain woman to travel across the state line with the intent to carry on prostitution, the same charge and proof being made for both the Mann Act and Travel Act counts. The *Pandelli* analysis would lead to the contrary result in our case. Barrington's Travel Act conviction was for her own travel, distinct from her causing others to travel, the element proven for her Mann Act violation.

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

(c) Investigations of violations under this section involving liquor shall be conducted under the supervision of the Secretary of the Treasury.

**3. § 2423. Transportation of minors**

(a) Any person who transports, finances in whole or part the transportation of, or otherwise causes or facilitates the movement of, any minor in interstate or foreign commerce, or within the District of Columbia or any territory or other possession of the United States, with the intent—

(1) that such minor engage in prostitution; or

(2) that such minor engage in prohibited sexual conduct, if such person so transporting, financing, causing, or facilitating movement knows or has reason to know that such prohibited sexual conduct will be commercially exploited by any person;

shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

(b) As used in this section—

(1) the term "minor" means a person under the age of eighteen years;

(2) the term "prohibited sexual conduct" means—

(A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(B) bestiality;

(C) masturbation;

(D) sado-masochistic abuse (for the purpose of sexual stimulation); or

(E) lewd exhibition of the genitals or pubic area of any person; and

(3) the term "commercial exploitation" means having as a direct or indirect goal monetary or other material gain.

The offense charged, and the evidence to prove her guilt, differed in each of the four counts for which Barrington was convicted. There was no double jeopardy violation.

AFFIRMED.