**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Hunter Keith JACKSON,**
**Defendant-Appellant.**

No. 86–2435.

United States Court of Appeals,
Fifth Circuit.

May 20, 1987.

Thomas S. Berg, Asst. Federal Public Defender, Roland E. Dahlin, II, Federal Public Defender, Houston, Tex., for defendant-appellant.

Susan L. Yarbrough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Hunter Keith Jackson appeals his conviction for illegal receipt of a firearm under 18 U.S.C. §§ 922(h)(1) and 924(a). He contends that the warrant for his arrest was defective, that the gun was therefore the fruit of an illegal arrest, and that consequently this evidence should have been suppressed. We agree and reverse.

1. 18 U.S.C. § 922(h)(1) provides:
   (h) It shall be unlawful for any person—
   (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
   . . . .
   to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

2. Jackson also argues that the district court improperly rejected his advice-of-counsel defense. We do not address this argument because we

## I

On July 1, 1981, Jackson was convicted in Harris County, Texas, of unlawful delivery of methamphetamine, a felony punishable by imprisonment exceeding one year, and sentenced to five years probation. Jackson's probation officer stated that he explained the Gun Control Act to Jackson and informed him that written permission from Washington, D.C., was required to remove the firearm disabilities related to his conviction.[1] When Jackson was released from probation in March 1983, he received from the sentencing court an order which stated in part:

It is therefore the order of the Court that the defendant be and he is hereby permitted to withdraw his plea of guilty, the indictment against the defendant be and the same is hereby dismissed and the Judgment of Conviction be hereby set aside as provided by law.

Soon after, Jackson sought the advice of his attorney, Jim Coate, concerning whether Jackson could purchase a firearm. Coate informed him that the state court order had dismissed the conviction, making him eligible to possess a firearm.[2]

On March 9, 1984 Jackson purchased an AMT, Model Backup, .380 (9mm Kurz) caliber semi-automatic pistol (the pistol) from Bissonet Pawn Shop in Bissonet, Texas. At the same time, he completed A.T.F. form 4473, answering "no" to the following question:

Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year? (Note: The actual sentence given by the judge does not matter—a "yes" answer is necessary if the judge could have given a

reverse the conviction on grounds that the district court should have suppressed the evidence against Jackson that was obtained as a result of his arrest. Excusing a defendant on the ground that, even though he committed a crime, he did so on the advice of counsel presumes that scienter or knowledge of the offense is a necessary element of proof for conviction. Scienter is not, however, an element of the crime defined in section 922. *See United States v. Schmitt*, 748 F.2d 249, 251–52 (5th Cir.1984); *United States v. Giles*, 640 F.2d 621, 627 (5th Cir.1981).

sentence of more than one year. Also, a "yes" answer is required if a conviction has been discharged, set aside, or dismissed pursuant to an expungement or rehabilitation statute. However, a crime punishable by imprisonment for a term exceeding one year does not include a conviction which has been set aside under the Federal Youth Corrections Act.)

It was not long before Jackson found himself involved with law enforcement officials once again. On March 24, 1984, Officer John Russell, of the Stafford, Texas, Police Department, charged Jackson with the crime of "theft by exercising control." He obtained a warrant for Jackson's arrest. The affidavit that supported the warrant for arrest described in specific terms the stolen property and went on to say:

> Affiant, J. Russell, a peace officer with the Stafford Police Department has in his possession a written signed and sworn statement by Doyle Alton Dunbar Jr. in which he admits burglarizing the building owned by William Rao. Dunbar further states that Hunter Jackson knew that he was going to burglarize Mr. Rao's building, and that when he was attempting to leave he got "stuck in a cement slab" and that Hunter Jackson arrived and pushed him back onto the Roadway and upon arrival at Hunter Jackson's apartment they unloaded the stolen property.

Jackson had the subject pistol in his possession when he was arrested on the warrant.

Jackson was indicted on six counts of violations of 18 U.S.C. §§ 922 and 924.[3] Prior to trial, Jackson moved to suppress much of the evidence against him. Granting the motion in part, the district court dismissed all counts against Jackson except count 2,[4] which alleges that Jackson possessed the subject pistol in violation of sections 922(h)(1) and 924(a). Jackson was tried on Count 2 in a bench trial. The district court found that the pistol had traveled in interstate commerce before Jackson purchased it; that Jackson possessed the gun when he was arrested on March 24; and that Jackson had been read his *Miranda* rights. The court then found beyond a reasonable doubt that Jackson had committed the acts alleged in Count 2 and that he was therefore guilty of violating 18 U.S.C. § 922(h)(1), 647 F.Supp. 995. Jackson was sentenced to three years of supervised parole.

## II

Jackson contends that the district court erred in refusing to suppress the pistol obtained at Jackson's arrest. According to Jackson, the affidavit supporting the arrest warrant was insufficient as a basis for probable cause. The district court disagreed, holding that "the judge who issued the warrant had a substantial basis for concluding that probable cause existed." Although the district court declined to reach the issue of whether the arresting officer was objectively reasonable in relying on the judge's determination, it noted in an aside that it was "inclined to find good faith by the officers who relied on the [ ] warrant."

## III

### A.

We begin our consideration of whether the affidavit will support the arrest warrant by looking to the Supreme Court's recent pronouncement on the subject.

---

**3.** 18 U.S.C. § 924(a) provides in part:

> (a) Whoever violates any provision of this chapter ... shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.

**4.** Count 2 states:

> That on or about March 9, 1984, in the Houston Division of the Southern District of Texas, and within the jurisdiction of this Court, HUNTER KEITH JACKSON, defendant herein, who had previously been convicted on July 1, 1981, in the 176th District Court of Harris County, Texas, of unlawful delivery of a controlled substance, methamphetamine, a crime punishable by imprisonment for a term exceeding one year, did knowingly receive a firearm, namely, an AMT, Model Backup, .380 (9mm Kurz) caliber, semi-automatic pistol, Serial Number A15768, which had been shipped and transported in interstate commerce from California to Texas.

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983), the Supreme Court adopted the "totality of the circumstances" test for determining whether a warrant is supported by probable cause. Under *Gates:*

> The task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed."

*Id.,* 103 S.Ct. at 2332 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). In reviewing a warrant, therefore, we consider the informant's veracity, reliability and basis of knowledge as important factors; however, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 2329.

On appeal, "we construe the sufficiency of ... [the] affidavit independently of the district court," and are not limited by the "clearly erroneous" standard of review. *United States v. Freeman,* 685 F.2d 942, 948 (5th Cir.1982). Like the district court, however, we do owe "deference to the magistrate's determination of probable cause, and we must construe the affidavit in a common sense manner." *United States v. McKinney,* 758 F.2d 1036, 1042 (5th Cir. 1985).

**B.**

■ We first address the extent to which the affidavit demonstrates the "veracity [and] reliability" of the informant.[5] The reliability of an informant may be established in a number of ways. *United States v. Phillips,* 727 F.2d 392, 396 (5th Cir.1984). The need to establish reliability may be satisfied by showing that the informant is an ˙identified bystander or victim-eye-witness. *Phillips,* 727 F.2d at 397. This is so because such informants are not likely to have personal reasons to give inaccurate information to law enforcement officials. *Id.* The affidavit may state that the informant has previously given tips that have proved to be correct. *Id.* Additionally, an informant's reliability can be demonstrated by corroboration of other information given. *Gates,* 103 S.Ct. at 2335.

These considerations are not applicable here because the affidavit makes clear that Dunbar was not a bystander or victim-eye-witness; instead, Dunbar, the informant, as an admitted perpetrator of the crime in question, had reason to shade any information he gave in order to exculpate himself or to curry favor with officials. *See id.* Additionally, the affidavit does not indicate that Dunbar had given previous tips or that his reliability was established by corroboration. Dunbar's reliability must therefore be established, if at all, by some other means.

■ The affidavit does reflect two characteristics of reliability that have been addressed in our previous cases. First, Dunbar's statement was sworn.[6] *See Phillips,* 727 F.2d at 398. In *Phillips* we held that a sworn statement made by an informant who was aware that she would be subject

---

5. Veracity and reliability can be distinct considerations. We need not concern ourselves with semantics, however, particularly in this case, because there is no fact in the affidavit that establishes the general truthfulness of the informant such as his standing in the community or his reputation for veracity.

6. We assume for purposes of this discussion that the entirety of Dunbar's information cited in the affidavit was included in a sworn affidavit. Whether that is true, however, is not clear.

The affidavit provides that Dunbar, in a sworn statement, admitted committing the burglary. In another sentence, the affidavit relates Dunbar's information regarding Jackson's participation in the crime, with no indication of whether this information was from the sworn statement. Because we conclude that the fact that the statement was sworn is irrelevant under the circumstances, we need not dwell on this point. We mention it, however, as another example of the inadequacy of this affidavit.

to prosecution for making a false statement, was sufficiently reliable. Whether an informant is aware of possible liability for a false sworn statement determines the weight to be given the statement. *See Adams v. Williams,* 407 U.S. 143, 146–47, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Here, however, the record and briefs are silent as to whether there were any consequences that Dunbar might have suffered for giving a false statement. Thus, it follows that we do not know whether Dunbar was aware of any consequences for providing false information. Without such information, a sworn statement from an admitted criminal is hardly more reliable than a statement that is only signed. That Dunbar's statement is sworn, then, is not of sufficient weight to alter our determination that the affidavit lacks adequate indicia of reliability.

■ Second, in his statement, Dunbar incriminated himself by admitting the burglary. This factor is not entitled to significant weight as it relates to Jackson, however, because even though Dunbar confessed to the crime, his information regarding Jackson's participation is not the part of the confession that primarily incriminates Dunbar. Indeed, Dunbar's evidence against Jackson shifts or at least spreads the blame for the crime. Additionally, Dunbar's inculpation of Jackson could reasonably be viewed as an attempt to curry favor and receive more lenient treatment from police officials. This affidavit, therefore, as a sworn, personally incriminating statement against Dunbar provides no significant indicia of Dunbar's reliability as to the charges he makes against Jackson.

As can be seen from our foregoing discussion, Russell's affidavit as presented to the magistrate provided very little indication of the informant's reliability.

## C.

■ Continuing our examination of the "totality of the circumstances" supporting probable cause for the issuance of this arrest warrant, we next consider whether the affidavit demonstrates a sufficient basis of knowledge on the part of the infor-

mant. This factor is particularly important here where the affidavit fails to show that Dunbar was a reliable informant, because, as *Gates* teaches, a strong demonstration of basis of knowledge might remedy a weak showing of reliability. 103 S.Ct. at 2329.

The affidavit described in particular the property that was stolen. It informed the magistrate that Dunbar admitted to burglarizing the building in question. As to Jackson's involvement, Dunbar's statement said that Jackson "knew" of the planned burglary and that Jackson assisted Dunbar after the burglary and then took possession of some of the stolen property that was stored at Jackson's residence. The affidavit attempts to demonstrate that (1) Jackson knew the property did not belong to Dunbar and (2) he exercised control over that property. Dunbar's statement that Jackson exercised control over the property is sufficiently supported; as an apparent eyewitness, Dunbar relates with specificity the circumstances in which Jackson took possession of the goods. The affidavit is devoid, however, of any facts indicating the basis of Dunbar's knowledge that Jackson "knew" of the burglary. We are told nothing of the relationship between Dunbar and Jackson from which we could possibly conclude that they were confederates or that the burglary was even discussed between the two; indeed the affidavit does not even state whether Dunbar previously knew Jackson. Dunbar's statement that Jackson "knew" of the burglary seems to be "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause," *Gates,* 103 S.Ct. at 2333, at least to the extent that the magistrate is called upon to rely on source of knowledge as the basis of probable cause.

■ An informant's basis of knowledge, however, can also be established by a particularly detailed tip. *See Gates,* 103 S.Ct. at 2330. Although the affidavit contains no details regarding Jackson's knowledge of the burglary, it does contain a particularized description of the property believed

to be in Jackson's possession.[7] That information is irrelevant to our consideration of the "informant's basis of knowledge," however, since there is no indication that this information was obtained from Dunbar. Indeed, it seems more likely that the source of this information is a police inventory.

Although the informant's basis of knowledge is well established as to Jackson's possession of the goods, it is flawed in its allegation that Jackson "knew" of the burglary. If the affidavit were only slightly more complete in other respects, this particular "flaw" would be immaterial. Viewing the affidavit as a whole, however, we conclude that the source of knowledge is not so convincing as to compensate for the complete lack of indicia of veracity and reliability.

### IV

■ In sum, the affidavit fails to demonstrate adequately the informant's veracity, reliability or his basis of knowledge so as to support probable cause for issuance of the arrest warrant. Our review is limited to the affidavit itself because the government presented no evidence to the district court to indicate whether other facts may have been before the magistrate and considered by him in his determination of probable cause.[8] Accordingly, we conclude that the affidavit is "bare bones" and incapable of supporting a finding of probable cause. The district court thus improperly denied Jackson's motion to suppress the pistol in question. The judgment of conviction of the district court is therefore reversed and set aside, and the case is remanded for further proceedings, if appropriate, not inconsistent with this opinion.

### REVERSED AND REMANDED.

**7.** In the "totality of the circumstances" analysis to determine whether probable cause exists, all facts contained in the affidavit are important to consider. Here, however, where the information provided by the informant is not only crucial but determinative of whether probable cause exists, a description of the stolen property cannot save an affidavit that is "bare bones" as to the informant's veracity, reliability, and basis of knowledge.

**8.** The government also offered no evidence relating to the good faith of the officers. Because of our conclusion that the affidavit is totally lacking in indicia of reliability and basis of knowledge, and is therefore a bare bones affidavit, the good-faith exception to the exclusionary rule is not available. *See United States v. Barrington*, 806 F.2d 529, 532 (5th Cir.1986).