**UNITED STATES of America, Appellee,**

v.

**Duane Carter OLSON, Appellant.**

No. 93–3635.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1994.

Decided April 15, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied May 27, 1994.

Linda M. Ojala, Minneapolis, MN, argued (Marc G. Kurzman, on the brief), for appellant.

Andrew S. Dunne, Minneapolis, MN, argued, for appellee.

Before MAGILL, Circuit Judge, HEANEY and JOHN R. GIBSON, Senior Circuit Judges.

HEANEY, Senior Circuit Judge.

Duane Carter Olson was charged in a two-count indictment with manufacturing in excess of fifty marijuana plants in violation of 21 U.S.C. § 841(a)(1), and using a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Olson filed a motion to suppress evidence seized during a search of his property. The district court denied his motion. He subsequently pleaded guilty to the firearms count,[1] and was sentenced to sixty months in prison. Pursuant to the plea agreement, Olson reserved the right to appeal the district court's denial of his suppression motion. We affirm, finding that there was probable cause to support the issuance of the search warrant.

## I.

In late 1992, local drug task force agents received a tip from an apparently unknown informant that Olson was cultivating marijuana in a mobile home on a farm where he was living and that he owned various weapons. That information was corroborated a few months later by an informant believed to be reliable who reported similar activity.[2] Based on the information, the agents undertook an independent investigation of Olson and his property.

The agents took aerial photographs of the property and confirmed that there was a mobile home on the site and that the farm did not appear to be operational. Using a Forward Looking Infrared (FLIR) device[3] mounted to a state patrol helicopter, the agents were able to observe a significant amount of heat coming from within the mobile home.[4] The results of the device were simultaneously recorded on videotape.[5] Several other neighboring farm sites were scanned using the FLIR. These sites did not exhibit the same elevated temperature as the mobile home on Olson's property. In addition to the heat emissions, the agents observed what appeared to be a venting system on the roof of the mobile home.

The agents subpoenaed Olson's electrical records for the previous few years and, for

---

1. The marijuana count was dismissed pursuant to the plea agreement.

2. It is not entirely clear from the affidavit supporting the search warrant of Olson's property whether there were two informants or just one. The government maintains that there were two informants. Although the affidavit is ambiguous in this respect, we agree that it can reasonably be read to support the inference that there were in fact two informants.

3. The FLIR device is a passive, nonintrusive system that detects differences in temperature of the surface of an object being observed. The device does not send any beams or rays into an area on which it is fixed, nor does it penetrate structures. Affidavit at 4. A type of thermal imaging device was apparently first developed by the United States Army to locate enemy vehicles in combat operations. Thermal imaging devices have since had other applications (*e.g.,* geological research, detecting overloaded power lines), and are increasingly being used by police to detect indoor marijuana growing operations.

4. An area of bright white was readily apparent and visible on a portion of the roof of the mobile home.

5. Still photographs of the mobile home were made from the videotape. The photographs revealed rafters on the north side of the mobile home that were visible due to the extreme heat. The agent who reviewed the videotape noted as well that the mobile home appeared to be split into two rooms; the divider wall was visible due to the transfer of heat from the north end of the home into the wall.

the purpose of comparison, the records of the prior tenant. The records revealed that Olson's average electrical usage was markedly high—three to four times that of the prior tenant. Managers of two local electric cooperatives found Olson's power usage to be "[s]omething non-weather related with a constant draw" and "high for a single person with no apparent agricultural operation." Affidavit at 5. Agent Scott Steffes of the drug task force noted that Olson's high electrical usage was consistent with the power usage commonly associated with indoor marijuana growing operations. *Id.*

The above information was included in an affidavit, and based on this information, a search warrant for Olson's property was issued. The search of Olson's mobile home uncovered an indoor marijuana growing and processing operation. In addition to marijuana plants and various items used to grow marijuana (*e.g.,* grow lights, electric timers, heaters), firearms and ammunition were recovered.

## II.

■ Olson advances two arguments on appeal: First, he argues that the use of the FLIR imaging device absent a search warrant was a violation of his constitutional rights under the Fourth Amendment; second, he argues that the affidavit in support of the search warrant was fatally defective because it did not contain the basis of knowledge for the informants' information. We find that there was sufficient evidence, independent of the information obtained through the use of the FLIR device, to support a

finding of probable cause. Therefore, we do not, and indeed need not, address the issue of whether the use of the FLIR device was a violation of Olson's Fourth Amendment rights, for even if we were to find such a violation, "[e]vidence ... obtained from sources other than the infrared inspection is not 'fruit of the poisonous tree' and its exclusion is not warranted."[6] *United States v. Kerr,* 876 F.2d 1440, 1443 (9th Cir.1989).

■ Under the "totality of the circumstances" test enunciated in *Illinois v. Gates,* the task of the reviewing court is "simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Olson's principal argument is that the affidavit in support of the search warrant did not establish the basis of the informants' knowledge. There is, he argues, no information in the affidavit about how the informants obtained the information they had (*e.g.,* there are no dates, recollections of specific events, or explanations as to how the marijuana allegedly was cultivated). He argues further that the independent investigation conducted by the agents was not sufficient corroboration of the informants' tips to justify a finding of probable cause.

The magistrate who reviewed Olson's suppression motion found that there was in fact no basis of knowledge for the informants' information, but nonetheless held that the

---

**6.** There is a split of authority on whether the use of a thermal imaging device constitutes a "search" within the meaning of the Fourth Amendment. District courts in both the Ninth and Third Circuits have held that the use of such a device is not a "search." *See United States v. Kyllo,* 809 F.Supp. 787 (D.Or.1992); *United States v. Deaner,* No. 92–0090–01, 1992 WL 209966 (M.D.Pa. July 27, 1992), *aff'd on other grounds,* 1 F.3d 192 (3d Cir.1993); *United States v. Penny–Feeney,* 773 F.Supp. 220 (D.Hawaii 1991), *aff'd on other grounds,* 984 F.2d 1053 (9th Cir.1993). A Fifth Circuit district court has held to the contrary. *See United States v. Ishmael,* 843 F.Supp. 205, 209–10 (E.D.Tex., 1994) (defendants had reasonable expectation of privacy in building and surrounding property scanned us-

ing thermal imaging device). Similarly, the Washington Supreme Court in *State v. Young,* 123 Wash.2d 173, 867 P.2d 593 (1994), found the infrared surveillance of the home of an individual suspected of growing marijuana was sufficiently invasive to invoke the protections of both the federal and state constitutions: "The infrared thermal detection investigation represents a particularly intrusive method of surveillance which reveals information not otherwise lawfully obtained about what is going on within the home." *Id.* 867 P.2d at 598–99. *See also* Lisa J. Steele, *Waste Heat and Garbage: The Legalization of Warrantless Infrared Searches,* 29 Crim.L.Bull. 19 (Jan.–Feb. 1993) (warrant should be required for use of infrared photography to determine activity within dwelling or attached garage).

agents' corroboration of the information supported a finding of probable cause. *See* Magistrate's Rpt. and Rec. at 6. We agree that the independent investigation by the drug task force agents in this case was adequate to support a finding of probable cause.

The agents verified that there was a mobile home on the farm site where Olson was purportedly living, and that there was no visible agricultural activity or livestock. They also learned that there was what appeared to be a venting system in the roof of the mobile home (apparently used to vent excessive heat). Finally, and perhaps most importantly, they obtained Olson's electric records which showed that Olson's electrical usage was abnormally high (three to four times higher than that of the prior owner). All of these facts, although individually consistent with innocence, taken together support a finding of probable cause. The informants' reliability was further established by the proven track record of one of the two informants, who had provided information in the past that led to numerous drug convictions. Affidavit at 3.

We hold, therefore, that notwithstanding the lack of a basis of knowledge for the informants' information, the search warrant was not fatally defective, because there was sufficient, other evidence from which a finding of probable cause could be made. Our holding is supported by the teachings of both the Supreme Court and this court. In *Gates,* the Supreme Court explained that an informant's reliability and basis of knowledge "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." [7] 462 U.S. at 233, 103 S.Ct. at 2329. Similarly, in *United States v. Anderson,* relying on *Gates,* we noted that "an informant's basis of knowledge [is] an important consideration, but not a rigid requirement, in the

probable cause determination." 933 F.2d 612, 615 (8th Cir.1991); *see also United States v. Broussard,* 987 F.2d 215, 222 (5th Cir.1993) (probable cause for issuance of warrant to search defendant's mobile home was provided even though affidavit did not contain basis of informant's knowledge, where there were corroborating facts in form of increased electrical usage, blackened windows, and purchase of hydroponic gardening equipment, consistent with marijuana cultivation).

We find, in sum, that the district court properly denied Olson's motion to suppress the evidence obtained during the search of his property.

7. The Court noted, for example, that

> if a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause on his tip.

462 U.S. at 233, 103 S.Ct. at 2329–30.