**UNITED STATES of America,**

v.

**Craig MEADOWS.**

**No. 1:94–cr–39.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Feb. 15, 1995.

Tina L. Nommay, U.S. Attys. Office, Fort Wayne, IN, for U.S.

### *ORDER*

WILLIAM C. LEE, District Judge.

This matter is before the court on Defendant's December 8, 1994, Motion for a *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), Hearing and Motion to Suppress. On December 27, 1994, the Government filed its Response, and on January 5, 1995, the Defendant filed his Reply. The court held a hearing on January 9, 1995, to pursue the appropriateness of a *Franks* hearing, after which the court took the matter under advisement and ordered supplemental briefs. The Government filed its Supplemental Brief on January 17, 1995, and the Defendant filed his Supplemental Brief on January 18, 1995. The Defendant's Motion for a *Franks* Hearing and Motion to Suppress are DENIED.

### *FACTS*

On March 31, 1994, a probable cause hearing was held before Judge David L. Hanselman, Sr., of the Wells County Circuit Court. Detective Terri Ellen Bricker of the Bluffton Police Department provided the testimony upon which probable cause for issuance of the search warrant was found.

At the probable cause hearing, Detective Bricker testified to the following facts: On March 15, the police received a Crime Stoppers tip that Craig Meadows had a marijuana grow system in the basement of his residence; specifically, he had two grow lights and quite a few marijuana plants. The informant stated that Meadows was worried because he thought the police were living close to him. Detective Bricker confirmed that this statement was consistent with the frequency of police presence in the area, as she pays regular visits to her father, who lives near Meadows. Detective Bricker also stated that the person providing the Crime Stoppers tip had previously provided information that had proven to be reliable.

P. Stephen Miller, Deputy Public Defender, Fort Wayne, IN, for Craig Meadows.

After receiving the tip, Detective Bricker confirmed that Craig Meadows did in fact

live at 2707 Mulberry Street in Vera Cruz. Then Detective Bricker obtained the electric bills for Meadows' house and three other houses that use basically the same type of heat. (Meadows' house had a propane tank, so Detective Bricker made sure that the other three houses also had propane tanks.) All four houses were of similar size. In comparing the electrical usage, Detective Bricker found that Meadows used, on average, twice as much electricity as the other three houses.

Next, Detective Faust conducted a thermal imaging test[1] on Meadows' residence and the house just west of Meadows'. Detective Bricker read the following excerpt from Detective Faust's report to the judge at the probable cause hearing:

> In viewing the foundation around the residence [and he is speaking about Mr. Meadows], I did find the foundation appeared to be more hot so to the front of the residence than to the rear. The day had been overcast and cool and I would have expected to see the foundation appearing slightly cooler. I did observe that the foundation under the front porch which sets back from the flush side of the porch appeared very hot indicating a source of heat inside. I would have expected this area to be very cool because of its not being exposed to external heat and the coolness of the ground. I also ran a thermal on the residence just to the west of the target residence and found it too was very poorly insulated. In comparison, I found that the target house was much hotter in appearance throughout. There was a definite difference between the target location's foundation and the comparison location with that of the target location appearing a lot hotter.

(Defendant's Exh. A, Transcript from Probable Cause Hearing, pp. 7–8.) Detective Bricker noted that the informant had reported that the grow system was in the basement of Meadows' house. When asked by the judge, she stated that a grow system consists of a special type of lighting source which produces an intense amount of heat. She asserted that, based on her experience, marijuana must be grown in a climate of eighty (80) degrees or more. Detective Bricker also responded affirmatively to the judge's questions of whether, based on her experience, the observations of the "extreme usage of electric [sic] and the thermal graph" were consistent with a marijuana grow operation and with the report made by the Crime Stoppers informant.

Based on this testimony, Judge Hanselman granted the government's request for a warrant. The warrant allowed for the search of the residence of Craig Meadows, 2707 Mulberry Street, Vera Cruz, for marijuana, marijuana seeds, marijuana growing systems, marijuana weighing scales, and paraphernalia. The search was conducted, and the police recovered marijuana plants, growing equipment, scales, and paraphernalia. The defendant now challenges certain statements and omissions made by Detective Bricker during the probable cause hearing and moves the court to hold a *Franks* hearing and subsequently to suppress the evidence resulting from the search.

## ANALYSIS

In *Franks v. Delaware,* the Supreme Court held that the underlying veracity of the warrant affidavit may be challenged in certain circumstances. 438 U.S. at 155, 98 S.Ct. at 2676.

> [W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* "To determine whether the defendant has made the requisite 'substantial preliminary showing,' the district court must sort through the materials defendant submits, weighing the possible inferences, and deter-

---

1. Thermal imaging is a procedure that measures the amount of heat emitted from an object. *United States v. Myers,* 46 F.3d 668 (7th Cir.1995) (holding that thermal imaging scanning is not a search within the meaning of the Fourth Amendment).

mine the likelihood that the affiant lied in the warrant." *United States v. Rivera*, 738 F.Supp. 1208, 1213 (N.D.Ind.1990) (citing *United States v. Pace*, 898 F.2d 1218, 1227 (7th Cir.1990)). In *Franks*, the Supreme Court described what constitutes a "substantial preliminary showing":

> [t]here is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

438 U.S. at 171–72, 98 S.Ct. at 2684.

Further,

> if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Id.*[2] "If the requisite preliminary showing is made, the district court must then determine whether the false statement [or omission] is material, in the sense that it is necessary to find probable cause." *Rivera*, 738 F.Supp. at 1213 (citing *United States v. Pace*, 898 F.2d at 1226). "The Seventh Circuit tests an affidavit's allegedly omitted statements under

the same standard that the *Franks* Court has established for false statements." *United States v. McNeese*, 901 F.2d 585, 594 (7th Cir.1990) (citing *United States v. Williams*, 737 F.2d 594, 604 (7th Cir.1984)).

The Seventh Circuit has recognized that a defendant has a "substantial burden to demonstrate probable falsity." *United States v. Skinner*, 972 F.2d 171, 177 (7th Cir.1992); *McNeese*, 901 F.2d at 594. An affiant acts with reckless disregard for the truth where she "in fact entertained serious doubt as to the truth of [her] allegations." *United States v. A Residence Located at 218 3rd Street*, 805 F.2d 256, 258 (7th Cir.1986) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968)). "Reckless disregard for the truth may also be proved inferentially 'from circumstances evincing obvious reasons to doubt the veracity of the allegations.'" *A Residence*, 805 F.2d at 258 (quoting *St. Amant*, 390 U.S. at 732, 88 S.Ct. at 1326). "Mere negligence by the affiant does not constitute reckless disregard for the truth." *Id.* In the case of omissions, the defendant "must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." *McNeese*, 901 F.2d at 594.

A. *Meadows' Claims of Certain False Statements or Omissions That Were Made Either Knowingly and Intentionally or with Reckless Disregard for the Truth.*

██ First, Meadows claims that Detective Bricker did not have the electric bill nor did she know the electrical usage of the residence to the west of the target house. Thus, the defendant claims that Detective Bricker's statement that the target house was using "just about" double the electricity of the "house next door" was false. Meadows offers to prove this through the testimony of Detective Bricker or Detective Faust. The

---

**2.** Regarding what happens once a hearing is held, the Court stated the following:

In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.
438 U.S. at 156, 98 S.Ct. at 2676.

government acknowledges that there was no electrical comparison of the house to the west of Meadows', but claims that this statement was an "innocent mistake."

Meadows has not made a substantial preliminary showing that Detective Bricker made this false statement either knowingly and intentionally or with reckless disregard for the truth. The defendant offers no evidence to show that this inaccuracy amounted to a deliberate or reckless misrepresentation. Mere negligence does not constitute reckless disregard for the truth. *A Residence,* 805 F.2d at 258.

■ Second, Meadows contends that Detective Bricker deliberately, or with reckless disregard for the truth, failed to disclose a portion of Detective Faust's report, which provides:

> OPINION/ It is in my opinion that in just comparing the utilities between the target location and those surrounding locations I do not see the type of large energy consumption which would be consistent with a large grow operation. I do however when considering all information and observations agree that there is some type of heat source in the basement areas of the target location which may or may not be directly related with an indoor grow.

(Defendant's Exh. B, Detective Faust's report, p. 7.)

The government claims that Detective Bricker was not specifically asked about Detective Faust's opinion, nor did she say anything contrary to his opinion. The government asserts that "Detective Bricker's alleged omission of someone else's opinion, without being asked what the opinion was and how it impacted on her investigation, cannot be the basis for concluding her omission [of an opinion that the electrical usage alone was not indicative of a *large* grow operation, but taken together with all information and observations, did indicate a heat source] was not a deliberate or reckless omission." (Government's Response to Defendant's Motion for *Franks* Hearing and Motion to Suppress, p. 11.)

"Courts must not permit agents, however well-intentioned, to report less than the total story to manipulate the inference that the [judge] will draw." *United States v. Scully,* Case No. 91–1014, 1992 WL 120430, 1992 U.S.Dist. LEXIS 9576 (N.D.Ill.1992) (finding a *Franks* violation where agents stated in their affidavit that defendant's home used five times as much electricity as his next door neighbor's when in fact the houses were not comparable: the defendant's house was half again larger and had an outdoor swimming pool). Detective Bricker did not disclose all of the relevant portions of Detective Faust's report. The report demonstrates why Detective Bricker may not have wanted Detective Faust's opinion included in her statement to the state court judge: Detective Faust was less certain than Detective Bricker that an indoor grow operation was present in Meadows' home. While he recognized that the presence of a grow operation was possible, his opinion was not decisive. Thus, Meadows has met his burden of making a substantial preliminary showing that Detective Bricker omitted this information either knowingly and intentionally or with reckless disregard for the truth.

■ Defendant's third allegation involves a colloquy that took place at the probable cause hearing about the electrical usage of the target home and comparison homes:

Q. How did Mr. Meadows' [electrical] usage compare to other comparisons?

A. It was higher than the rest of the three.

Q. How much higher?

A. Almost double.

Q. Would it be double to all three of the others?

A. Um, on an average, yes.

(Defendant's Exh. A, Transcript of Probable Cause Hearing, p. 4.) Meadows asserts that Detective Bricker deliberately omitted the following portion of Detective Faust's report, which discusses the kilowatt hours used by the target home and the comparison homes:

> UTILITIES/ I had Officer Bricker run utilities from the target locations as well as other comparison homes in the area. In reviewing these I did find that the kilowatt hours used by the target location was

slightly higher looking at a period between 10–93 to 3–94 as compared to 10–92 to 3–93. In Jan. 1994 compared to Jan. 1993 there was a 2053 Kilowatt hour jump which would indicate a large consumption of power during this time. On the comparison residences I found that they were approx. the same as the target location in comparing one year against the previous year. Only in one comparison did I find a kilowatt jump which was over 5000 kilowatt hours consumed in a one month period and this was not at the target location. (Defendant's Exh. B, Detective Faust's report, p. 8.)

The Government claims that Detective Bricker's testimony is supported by the electrical bills and that someone else's conclusion about the bills does not make her comparison a false statement.

While it is true that "courts must not permit agents, however well-intentioned, to report less than the total story to manipulate the inference that the [judge] will draw," *Scully, supra*, it is also true that "an [officer] cannot be expected to include in [her testimony] every piece of information gathered in the course of an investigation." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir.1990). The opinions of Detectives Bricker and Faust address two separate issues related to the electrical consumption of the houses. Detective Bricker testified about the difference between the overall average electrical usage of the comparison homes and the defendant's home. Detective Faust's opinion compares the electrical usage of each house for a five-month period in one year to the electrical usage of the same house for the five-month period the following year.

The judge specifically asked Detective Bricker, "How did Mr. Meadows' [electrical] usage compare to other comparisons?" Detective Faust's opinion concerning the comparison of each residence from one year to the next would not have been responsive to this question. His opinion answers a different question, one which Detective Bricker was not asked by the judge at the probable

cause hearing and which neither Detective Bricker nor Judge Hanselman indicated was relevant to determine whether an indoor grow operation might be present.[3] Thus, the defendant has not made a substantial preliminary showing with regard to this allegation.

■ Fourth, Meadows claims that Detective Bricker made a false statement when she said that the target house and the house that Detective Faust tested were the same size. Meadows asserts that she was familiar with his neighborhood, and therefore, she knew that the house next to his was considerably smaller. In support of this contention, defendant has submitted a copy of a photograph that he claims depicts the two houses and shows that defendant's house is considerably larger. Meadows asserts that Bricker's "knowledge of the neighborhood indicates that she was aware that the two-story house of the defendant was considerably larger than the smaller one-story house." (Defendant's Reply Memorandum in Support of Motion for *Franks v. Delaware* Hearing and Motion to Suppress, p. 5.) The government claims that "Detective Bricker's testimony about the size of the comparable houses referred to the houses upon which there was an electrical comparison." (Supplemental Brief of Government, p. 8, n. 3.)

The transcript from the probable cause hearing indicates, as Meadows contends, that Detective Bricker was referring to the house that Detective Faust tested, located west of Meadows' house. In responding to the judge's inquiry about Detective Faust's procedure in conducting the thermal imaging test, Detective Bricker responded:

> What he did was he came up and went to the target house which would be Mr Meadows residence and he did that on the 25th of March. *He also checked the house just west of Mr. Meadows that would be similar in size* and compared those two together....

(Defendant's Exh. A, Transcript from Probable Cause Hearing, p. 7.) (emphasis added). The photograph submitted by the defendant

---

**3.** Additionally, while the defendant contends that Detective Faust's opinion should have been giv-

en, he does not explain how it would be relevant.

shows that the two houses are quite different in size. Also, Detective Bricker stated that she was familiar with this neighborhood because her father lived in a house behind Meadows'. Thus, the defendant has made a substantial preliminary showing with regard to this allegation.

■ Fifth, Meadows attributes ·great importance to the fact that Detective Faust, not Detective Bricker, was a certified thermal imaging operator: "Officer Bricker was not a certified operator and no evidence was submitted to demonstrate her ability to testify as to the meaning of the results of a thermal imaging test." (Defendant's Reply Memorandum, p. 5.) Thus, the defendant claims that "[a]s a result, her entire testimony regarding the meaning of the thermal imaging test and the evaluation for the comparison of the electrical usage as it relates to such test results was reckless and without regard for the truth." *Id.* at 5, 6.

Meadows has not specifically alleged the false statements that were made. Nor has he furnished any affidavits or otherwise reliable statements in support of his contention. *See Franks,* 438 U.S. at 171–72, 98 S.Ct. at 2684. A person acts with "reckless disregard for the truth" where she entertains serious doubt as to the truth of her statements. *A Residence,* 805 F.2d at 258. Defendant has submitted nothing that might indicate that Detective Bricker was entertaining serious doubt· about the truth of her testimony regarding the thermal imaging test and electrical usage comparison.

Detective Bricker's testimony was based on her experience as a police officer and on the thermal imaging test results as reported by Detective Faust. Detective Bricker simply stated that, *based on her experience,* the results of the thermal imaging test were consistent with the presence of a grow operation. The results of the test, as read by Detective Bricker to the judge at the probable cause hearing, used common words and terms; the results were not reported using difficult-to-understand scientific jargon.[4] Further, the defendant does not cite any authority for the proposition that a detective on a police force is not qualified to testify to the meaning of the results of a thermal imaging test. The defendant has not made a substantial preliminary showing with regard to this allegation.

■ Sixth, Meadows claims that Detective Bricker did not give a truthful response in answering the judge's question of whether "based on your experience, are the observations of the extreme usage of electric and the thermal graph consistent with a grow operation?" because "her experience in this case, based on the opinion of the only person certified to determine the significance of the thermal imaging test results, was that such evidence may or may not reveal the existence of a grow operation." (Defendant's Supplemental Memorandum in Support of Motion for *Franks v. Delaware* Hearing, p. 2.)

---

**4.** The entirety of Detective Faust's report of the thermal imaging test results reads as follows:

THERMAL/ I did run a thermal on the target location from the front and both sides. The back of the residence which faces North was not accessible because of a dog in the back yard of the residence. In viewing the residence through the thermal imagery device I did find that the residence is very poorly insulated and there was indications of high heat loss. Information received was that the possible grow was contained in the basement of the residence with two grow lights. In viewing the foundation around the residence I did find the foundation appeared to be more hot so to the front of the residence than to the rear. The day had been overcast and cool and I would have expected to see the foundation appearing slightly cooler. I did observe that the foundation under the front porch, which sets back from the flush side of the porch appeared very hot (indicating a source of heat inside). I

would have expected this area to be very cool because of its not being exposed to external heat and the coolness of the ground.

FURTHER/ I did also run a thermal on a residence just to the West of the target residence and found that it too was very poorly insulated. In comparison, I found that the target house was hotter in appearance throughout. There was a definite difference between the target location's foundation and the comparison location with that of the target location appearing a lot hotter.

OPINION/ It is my opinion that in just comparing the utilities between the target location and those of surrounding locations I do not see the type of large energy consumption which would be consistent with a large grow operation. I do however when considering all information and observations agree that there is some type of heat source in the basement area of the target location which may or may not be directly related with an indoor grow.

With regard to this allegation, the defendant has not furnished any support for the contention that the statement is false or was made intentionally or with reckless disregard for the truth. The question posed by the judge at the probable cause hearing inquired of Detective Bricker whether, based on her experience, both the electrical bills and the thermal imaging test were consistent with a grow operation. Her conclusion is not inconsistent with Detective Faust's report, which stated that there was an unexpected source of heat coming from the foundation of the house and concluded that a grow operation may be present. Further, Detective Bricker was not relying solely on the thermal imaging test results when she answered affirmatively; she was considering the electric bills as well. Her conclusion was based on the sum of her background, knowledge, and experience as a police officer, which she brought to bear on the particular facts of this case. The defendant has not made a substantial preliminary showing with regard to this allegation.

Therefore, the defendant has met the initial *Franks* burden with respect to the second and fourth allegations; to wit: he has made a substantial preliminary showing that the false statements and omission were made intentionally or with reckless disregard for the truth. With respect to the first, third, fifth, and sixth allegations, the defendant has not met this burden.

B. *With Regard to Those Allegations for Which the Defendant Has Met His Initial Franks Burden, When the Alleged False Statement Is Set Aside and the Omission Added, Sufficient Content in the Warrant Testimony Remains to Support a Finding of Probable Cause.*

■ Now the court must consider the testimony presented to Judge Hanselman at the probable cause hearing as if Detective Bricker's statement that these two houses are "similar in size" was not part of the testimony given and as if Detective Faust's opinion regarding the thermal imaging test results had been included in the testimony. Then, if "there remains sufficient content in the warrant [testimony] to support a finding of prob-

able cause, no hearing is required." *Franks,* 438 U.S. at 171–72, 98 S.Ct. at 2684.

As the Seventh Circuit has explained,

Probable cause requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false … The relevant inquiry is not whether specific conduct is innocent or guilty, but the level of suspicion attaching to particular kinds of noncriminal acts.

*United States v. Burrell,* 963 F.2d 976, 986 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). Also, as the Supreme Court stated in *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983),

[t]he task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and the "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

First, the deletion of Detective Bricker's alleged false statement about Meadows' house being the same size as the house just to the west, upon which thermal image testing was conducted, does not adversely affect the probable cause determination. The thermal imaging was used to compare the heat emitted from the two houses. There is no indication in either Detective Bricker's testimony or Detective Faust's report that the size of the houses was relevant when comparing their thermal heat.

Second, the addition of Detective Faust's opinion about the thermal image testing does not adversely affect the probable cause determination. Faust's opinion states that he did not see "the type of large energy consumption that would be consistent with a *large grow operation*" and that "there is some type of heat source in the basement areas of the target location which may or may not be directly related with an indoor grow" (emphasis added). Detective Faust refers to a large grow operation; he does not

state that the evidence is inconsistent with any (perhaps a small or medium-sized) grow operation. Further, he states that there "is some type of heat source in the basement area" and concludes that this *may* be related to an indoor grow operation. Detective Faust never states that based on the thermal imaging test, a grow operation does not exist, or even that it is more likely than not that a grow operation does not exist.

A thermal imaging test is never conclusive about the existence of a grow operation, but simply indicates the level of heat that is being emitted. *See United States v. Broussard,* 987 F.2d 215, 222 (5th Cir.1993); *United States v. Olson,* 21 F.3d 847, 848, n. 3 (8th Cir.1994). Detective Faust's opinion states that, based on the thermal imaging test, an unusual amount of heat was being emitted from the defendant's house and it was possible that an indoor grow operation existed. Detective Bricker's testimony at the probable cause hearing was consistent with Detective Faust's opinion.

■ Even with Detective Faust's opinion added, and the allegedly false statement of Detective Bricker's deleted, the following testimony submitted at the hearing supports a finding of probable cause: (1) the tip that the marijuana grow was in Meadows' basement; (2) the tipster's report that Meadows was worried about the police finding his grow because he thought that a police officer lived behind him; (3) that this police officer was most likely Detective Bricker, who visited her father, who lived behind Meadows; (4) that the tipster had been found to provide reliable information in the past; (5) the electric bills, which showed a marked increased use in Meadows' home when compared to the other three comparably sized homes in the area; and (6) the results of a thermal imaging test, which revealed an unexpected amount of heat being emitted from Meadows' home.[5] Based on this testimony, the judge could properly have found that probable cause existed for issuance of the warrant.

The defendant also disputes the reliance on the Crime Stoppers informant, because

"Bricker did not know how the crime stopper informant obtained his information." (Defendant's Offer of Proof, p. 4.) In *United States v. Olson,* the Eighth Circuit found that where the affidavit in support of the search warrant does not establish the basis of the informants' knowledge, the agents' corroboration of the information supports a finding of probable cause. *United States v. Olson,* 21 F.3d 847, 850 (8th Cir.1994). In *Olson,* the defendant claimed that there was no information in the affidavit about how the informants obtained the information they had. *Id.* at 849. The court held that, "notwithstanding the lack of a basis of knowledge for the informants' information, the search warrant was not fatally defective, because there was sufficient, other evidence from which a finding of probable cause could be made." *Id.* at 850. Specifically,

> [t]he agents verified that there was a mobile home on the farm site where Olson was purportedly living, and that there was no visible agricultural activity or livestock. They also learned that there was what appeared to be a venting system in the roof of the mobile home (apparently used to vent excessive heat). Finally, and perhaps most importantly, they obtained Olson's electric records which showed abnormally high (three to four times higher than that of the prior owner). All of these facts, although individually consistent with innocence, taken together support a finding of probable cause. The informants' reliability was further established by the proven track record of one of the two informants, who had provided information in the past that led to numerous drug convictions.

*Id.*

The court in *Olson* noted that in *Illinois v. Gates,*

> the Supreme Court explained that an informant's reliability and basis for knowledge "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally had

---

5. Detective Faust stated in his report that "I would have expected this area to be very cool because of it's [sic] not being exposed to external

heat and the coolness of the ground." (Defendant's Exh. B, Detective Faust's Report, p. 7.)

guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."

*Olson*, 21 F.3d at 850 (quoting *Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983)).

In *United States v. Broussard*, 987 F.2d 215, 222 (5th Cir.1993), the Fifth Circuit addressed a similar situation and found that probable cause for issuance of a warrant to search defendant's mobile home was provided where there were corroborating facts, even though the affidavit did not contain the basis of informant's knowledge, veracity, and reliability. The affidavit simply stated that "marijuana and cultivation equipment had been seen" at Broussard's mobile home, but did not inform as to whether the tipster had first-hand knowledge or whether he was relying on a third person. *Id.* The court found it significant that the affidavit did not rely completely on the information from the informant. The corroborating facts in the case were increased electrical usage, blackened windows, the purchase of hydroponic gardening equipment, and a thermal imaging test indicating more intense heat coming from Broussard's mobile home than from others in the area. *Id.* at 222.

Likewise, in the case at hand, the tipster's information was corroborated by Detective Bricker. Detective Bricker did not attempt to rely solely on the tipster's statements, but initiated a thorough investigation. She confirmed that Meadows lived at the 2707 Mulberry Street address. That Meadows was worried about a police presence near his residence was corroborated by the fact that Detective Bricker's father, who she visits regularly, lives behind the defendant. That the indoor grow was located in the basement was corroborated by the thermal imaging test results indicating that there was an unusual heat source—much hotter than the comparison house that was tested—coming from the foundation of the house under the porch, where Detective Faust expected the area would have been very cool. Detective Bricker testified that the tipster had provided reliable information in the past.

Additional corroboration came from the electrical bills, which indicated that Meadows was using, on average, double the amount of electricity as three nearby residences, all similarly sized houses with propane heating sources like the defendant. Therefore, as in *Olson* and *Broussard*, even though the basis of the informant's knowledge was not established in the warrant testimony, Detective Bricker corroborated the information and probable cause for issuance of the warrant existed.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for a *Franks* Hearing and Motion to Suppress are DENIED.