# United States Court of Appeals
### For the Eighth Circuit
_____

No. 19-1737
_____

United States of America

*Plaintiff - Appellee*

v.

Todd Seaver Knutson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: May 15, 2020
Filed: July 24, 2020
[Published]
_____

Before SMITH, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.
_____

PER CURIAM.

Todd Knutson pleaded guilty to possession of methamphetamine ("meth") with intent to distribute after the district court[1] denied (1) his request for a *Franks*[2] hearing and (2) his motion to suppress. On appeal, he challenges those denials. We affirm.

## I. *Background*

Officers began investigating Knutson after a cooperating defendant (CD) told them that a white male named Todd was selling large amounts of meth out of a home located at 890 Arkwright Street ("Arkwright home"). The CD had purchased drugs from Todd for a long time and had seen him in the past four days with a .45 revolver, a .40 automatic handgun, a submachine gun, and an assault rifle. The CD also indicated that Todd had a stolen Dodge in his garage and cameras around the home. After identifying Knutson as the home's occupant, officers showed the CD a picture of him. The CD confirmed that it was Todd. A background check revealed that Knutson could not legally possess firearms.

Officers later received similar information from a confidential informant (CI), who was familiar with Knutson and knew that he sold drugs out of the Arkwright home. The CI also indicated that Knutson had various firearms in the home, including a .45 revolver, a .45 automatic handgun, a submachine gun, and an assault rifle. Like the CD, the CI noted that Knutson had a stolen Dodge in the garage and had cameras around the home, and the CI identified him from a photograph.

The CI agreed to visit Knutson's home. After the visit, the CI recounted to the officers what was inside: large amounts of meth, an assault rifle, and a submachine gun.

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

[2]*Franks v. Delaware*, 438 U.S. 154 (1978).

Based on that information, officers received a search warrant for the Arkwright home and for Knutson's person. In addition to the facts above, the warrant described Knutson as the home's tenant. Officers executed the warrant on Knutson's person and the home separately. When they attempted to stop Knutson, he fled, and the officers found money and a gun along his flight path. During the search of the home, officers discovered meth, drug paraphernalia, and a number of guns. They also found pieces of mail that tied Knutson to the home, and two individuals at the home stated that Knutson lived there.

Before the district court, Knutson challenged the warrant as unsupported by probable cause and requested a *Franks* hearing, arguing that the warrant contained false information or material omissions.

First, the district court rejected Knutson's probable cause argument. A quick review of the evidence shows why. The CD indicated that someone with the same name and race as Knutson sold meth, possessed firearms and a stolen vehicle, and maintained security cameras at the Arkwright home. That information was independently corroborated by the CI, whose information was nearly identical—even identifying some of the same guns and the make of the stolen car. Further, the officers' personal investigation, which included sending the CI into the home, corroborated those findings. The district court denied Knutson's motion to suppress.

Second, Knutson requested a *Franks* hearing. The warrant affidavit indicated that, "[t]hrough the investigation[,] [the affiant] was able to identify the *tenant* of [the Arkwright home] as Todd Seaver Knutson." Search Warrant Appl. at 3, *United States v. Knutson*, No. 0:17-cr-00157-MJD-HB-1 (D. Minn. Sept. 14, 2017), ECF No. 47-1 (emphasis added). Knutson claimed he was entitled to a *Franks* hearing because the affiant (1) did not have evidence proving he was the tenant or (2) omitted evidence that showed Knutson was not the tenant. Both arguments centered on Knutson's claim that someone else's name was on the lease documents. The district court noted that

-3-

someone other than the lessee may be the tenant of the home and that Knutson failed to show that he did not constitute the latter. Additionally, the court found that probable cause supported the warrant even if the challenged statement was struck from the affidavit.

## II. *Discussion*

Knutson challenges the denials of his motion to suppress and request for a *Franks* hearing. When considering denials of motions to suppress, we review factual findings for clear error and legal conclusions de novo. *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016). We review the *Franks* issue for an abuse of discretion. *United States v. Gabrio*, 295 F.3d 880, 882 (8th Cir. 2002).

## A. *Motion to Suppress*

Knutson seeks to have the search evidence in his case suppressed, claiming that the warrant application's factual allegations were insufficient to establish probable cause. "Issuance of a search warrant must be supported by probable cause, which depends on whether, under the totality of the circumstances, there is a fair probability evidence of a crime will be found in a particular place." *Faulkner*, 826 F.3d at 1144. "An issuing judge's determination of probable cause should be paid great deference by reviewing courts and should be upheld if the judge had a substantial basis for concluding that a search would uncover evidence of wrongdoing." *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (cleaned up).

Here, the search warrant application relied on the CD's and CI's statements. "It is well-settled law that the statements of a reliable informant can provide, by themselves, a sufficient basis for the issuance of a warrant." *United States v. Gladney*, 48 F.3d 309, 314 (8th Cir. 1995) (internal quotation omitted). An "informant's reliability, veracity, and basis of knowledge are relevant considerations—but not independent, essential elements—in finding probable cause." *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986). "Information may be sufficiently reliable

-4-

to support a probable cause finding if it is corroborated by independent evidence." *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013) (cleaned up).

Knutson claims that (1) the affidavit does not indicate the basis of the informants' knowledge and (2) the informants lacked an adequate track record to make up for that deficiency.

As we have said before, "[t]he lack of specific details regarding basis of knowledge is not fatal in the probable cause analysis." *Gladney*, 48 F.3d at 315. We addressed similar circumstances in *United States v. Olson*, 21 F.3d 847 (8th Cir. 1994). There, an anonymous informant reported that an armed individual was cultivating marijuana in a home. *Id.* at 848. That tip was corroborated by a known informant with a successful track record. *Id.* at 848, 850. Further investigation revealed elevated electricity usage, a heating ventilation system, and no agricultural use of the identified land. *Id.* at 850. Taken together, we held, the tips and investigation established probable cause and overcame the absence of information regarding the basis of knowledge. *Id.*

Applying *Olson*, the basis for probable cause is strong. Here, unlike in *Olson*, neither informant was anonymous. Known informants are generally more credible because they can be held accountable for false statements. *See United States v. Solomon*, 432 F.3d 824, 827–28 (8th Cir. 2005). The informants' statements gave more detail than those in *Olson*. Specifically, the informants here provided accounts of the weaponry and stolen car inside the house, the surveillance system around the house, and Knutson's history of violence. Such detail is indicative of a basis of knowledge. *See United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) ("In assessing an informant's basis of knowledge, the degree of detail contained in a tip may be used to infer whether the informant had a reliable basis for making his statements." (internal quotations omitted)). Additionally, the informants provided almost identical accounts of potential evidence to be uncovered. *See Adolphus v. Cty.*

*of Los Angeles*, 5 F. App'x 596, 597–98 (9th Cir. 2001) (mem. op.) (finding qualified immunity barred a § 1983 wrongful-arrest claim because there was reasonable belief of probable cause where two informants gave virtually identical accounts). And contrary to Knutson's claim, there is some indication of the informants' basis of knowledge; both the CD and CI knew Knutson, and the CD had purchased meth from Knutson for a long time.

Admittedly, one informant in *Olson* had a successful track record. Knutson argues that we cannot affirm because neither the CD nor the CI had one. But our case law does not impose such a categorical bar. Instead, where an informant lacks a track record, we require "some independent verification to establish the reliability of the [informant's] information." *United States v. Brown*, 49 F.3d 1346, 1349 (8th Cir. 1995) (internal quotation omitted); *see also United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014) (per curiam) ("It is well established that even the corroboration of minor, innocent details can suffice to establish probable cause." (cleaned up)).

Independent verification exists here. The two informants verified each other by independently providing highly-detailed, nearly-identical accounts. Further, the CD and CI affirmed that the person "Todd" was Knutson based on a photograph.[3] And according to the warrant application, Knutson shared the same first name, race, and address as the described dealer. Finally, the CI verified the informants' information by entering the home and confirming the presence of drugs and firearms.[4]

---

[3]Knutson argues that showing the informants a single picture was overly suggestive. Even assuming that standard applies to warrant applications, his contention is undercut because the CD and CI were familiar with him. *See United States v. Dobbs*, 449 F.3d 904, 909–10 (8th Cir. 2006).

[4]Knutson argues that the officers violated his rights by sending the CI into the home. Private searches done at police direction can run afoul of the Fourth Amendment. *See United States v. Suellentrop*, 953 F.3d 1047, 1050 (8th Cir. 2020). But Knutson consented to the CI's entrance. *See United States v. Shigemura*, 682

Lastly, Knutson argues that the CD was not reliable because he/she might have been seeking leniency in his/her case. That possibility was likely apparent to the issuing magistrate judge; the warrant referred to the informant as "Cooperating Defendant." *See, e.g.*, Search Warrant Appl. at 2. Further, information may be reliable even when provided for personal gain. *See United States v. Gater*, 868 F.3d 657, 660 (8th Cir. 2017).

In summary, the district court did not err in finding there was probable cause; the affidavit was based on two highly detailed tips that were corroborated by police investigation.

## B. Franks *Issue*

The warrant application indicated that the affiant "identif[ied] the *tenant* of [the Arkwright home] as Todd Seaver Knutson." Search Warrant Appl. at 3 (emphasis added). Knutson argues that he was not the *tenant* because someone else signed the lease. To obtain a *Franks* hearing, Knutson "must make a substantial preliminary showing" "that a law enforcement official either [1] recklessly or deliberately included a false statement in the affidavit[] in support of the search warrant[] or [2] omitted a truthful statement from the affidavit[]." *United States v. Engler*, 521 F.3d 965, 969 (8th Cir. 2008) (internal quotation omitted). He "must also show that the alleged false statement or omission was necessary to the finding of probable cause." *Id.* (internal quotation omitted). "Such a showing is not easily made." *Id.*

Knutson's argument mixes *lessee* and *tenant*; the two are not mutually inclusive. A *tenant* is "[o]ne who holds or possesses land[]." *Tenant*, Oxford English

_____

F.2d 699, 705–06 (8th Cir. 1982) (finding that a search by an undercover offer did not run afoul of the Fourth Amendment because the defendant gave consent for him to enter). Ultimately, we decline to reach this argument because Knutson (1) failed to raise it below and (2) offers no reason why the error was plain on appeal. *See Byers v. United States*, 561 F.3d 832, 836 (8th Cir. 2009).

Dictionary (2d ed. 1989). Uncontested allegations in the affidavit indicated that Knutson possessed the Arkwright home as his residence: Both informants stated that Todd sold meth out of the house, kept guns in the home, and had a stolen car in the garage. Both informants described the house as Knutson's. The warrant also indicated that Knutson kept watch over the home through the use of surveillance cameras. Those facts substantiate that Knutson "possessed" the home, and he does not dispute them. Therefore, he has not made a substantial preliminary showing that the affiant's description of him as a tenant was false or based on a material omission or lack of investigation.

Further, Knutson has not shown "that the alleged false statement or omission was necessary to the finding of probable cause." *Engler*, 521 F.3d at 969 (internal quotation omitted). If the statement was removed or the warrant indicated that someone else leased the home, there was still adequate information in the warrant to tie Knutson's drug activities to the house: the informants both said that he sold drugs out of the home, possessed weapons in the house, had a stolen car in the house, and watched over the house to protect his drug activities. As discussed above, those statements and the officers' investigation established probable cause that there was evidence of drug activity; this would be true regardless of the lessee's identity.

In short, we cannot say that the district court abused its discretion by denying Knutson's request for a *Franks* hearing.

### III. *Conclusion*

For the foregoing reasons, we affirm the district court's judgment.

_____